## PHELAN vs. WHITMAN.

*Sixth Judicial District Court, October,* 1857.

### MANDAMUS.

Courts will not, by mandamus, interfere with the acts of an executive officer, unless the act commanded by law is so simple and so clearly defined, as to take away all discretion, and make obedience a mere ministerial act.

Executive officers, being liable on their official bonds, to those who may be damaged by their misconduct, they should be allowed, in cases admitting of doubt as to the construction of the law governing their acts, to put their own construction upon it, and abide the consequences.

The pertinent facts are set forth in the opinion.

———, for plaintiffs.

———, for defendant.

BOTTS, J.—This is an application for a mandamus, to be directed to the Controller of State, commanding him to issue his warrant in favor of plaintiffs, for the several sums of $447 99-100, claimed to be due them respectively from the State of California.

The case comes up on an agreed statement of facts. No objection is taken, either by demurrer or plea, to this extraordinary joining of the parties plaintiff.

The only facts amongst those admitted, that seem to me to bear upon the question at issue, are the following: The petitioners are clerks in the office of the Treasurer of the State of California, appointed, Phelan on the 20th day of February, 1857, and Potter on the 24th day of February, 1857. By an Act of the Legislature, passed, April 21st, 1856, the pay of the clerks in the Treasurer's office was reduced from $270 to $200 per month. The sixth section of this law reads as follows:

" This Act shall not be held to reduce the salary or pay of any of the incumbents now in office, who shall for their present term receive compensation at the rates now prescribed by law, but shall apply to every such officer hereafter elected or appointed."

By an Act of April 30th, 1857, an appropriation was made of $2,160, to pay the clerks in the Treasurer's office. This sum divided amongst these clerks, would pay them exactly $270 per month.

If the accounts of the plaintiffs are audited at the rate of $270 per month, it is agreed that the said sum of $447 99-100 is due them.

In deciding this case, I will take occasion to remark, that it is a very delicate question to determine, whether the duty and responsibility of auditing the accounts of those having claims upon the public treasury, is not devolved by our political system, exclusively, upon the Controller of State; whether the courts, by mandamus, can do more than set this officer in motion without pretending to control or revise his official action. It may be very convenient for these officers to procure the assistance of the courts in the solution of doubts as to their official acts, but they should pause to inquire whether a mandamus would protect them and their bondsmen, from the effects of official misconduct.

The extreme verge to which courts have ever gone in relation to the acts of executive officers, is to declare that where the act commanded by law is so simple and clearly defined as to take away all discretion, and make obedience a mere ministerial act, the courts will, by mandamus, compel its performance. It is sometimes very difficult to distinguish between those cases which leave room for the exercise of discretion, and those in which the act to be performed is merely ministerial.

Indeed, it is clear, that in determining this very question much will depend upon the peculiar views of him who is called on to decide it. What may appear a clear, simple and unmistakable command to one mind, may furnish room for doubt, difficulty and the exercise of discretion to another. For instance, this question will always occur in such a case as the present. To audit accounts against the State is the duty of the Controller; it can in no way be called a judicial function. Laws are passed to guide the Controller in auditing accounts. They are commands of the Legislature directed to this officer, intended to govern him in the discharge of his official duty. Is it not his duty to construe them? Are not he and his bondsmen responsible for his obedience to them? Suppose I should command him to do that which, hereafter, upon a suit upon his bond, this court, upon better advisement, should consider a breach of his official duty, would such an order protect him? This is a matter worthy of grave consideration, because the question of protection is clearly the test of authority. It cannot be that the law can compel an action for which the law can demand a forfeit.

In this case I am relieved from the necessity of doing more than throwing out doubts and hints upon this subtle point; because, upon the merits of this particular case, without regard to the general question, I am prepared to deny the application for a mandamus.

The law of 1856, reducing the salary of the clerks, is, in its terms, clearly applicable to the plaintiffs, they not being incumbents then in office, but being appointed after the passage of the Act. The only question, in truth, that it is proposed to raise by the terms of this submission, is, does the appropriation made by the bill of 1857 virtually repeal the reducing Act of 1856? I answer, emphatically and confidently, that no positive statute can be repealed by an implication so loose as this. The presumption that the Legislature of 1857 overlooked the statute of 1856, is just as reasonable as that they intended to repeal it.

The application for a mandamus is denied.